IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| JOSEPH SHEGOG, | ) |
| | ) |
| Plaintiff | ) CASE NO. 1:21-CV-00357-SPB |
| | ) |
| vs. | ) RICHARD A. LANZILLO |
| | ) CHIEF UNITED STATES |
| OFFICER GRINELL, JENNIFER | ) MAGISTRATE JUDGE |
| MOONEY, JENNIFER DEPLATCHETT, | ) |
| MS. SHRADER,  MS. GILES, ALL SUED | ) REPORT AND RECOMMENDATION ON |
| IN THEIR INDIVIDUAL AND OFFICIAL | ) DEFENDANTS' MOTION FOR SUMMARY |
| CAPACITIES; | ) JUDGMENT |
| | ) |
| | ) IN RE: ECF NO. 45 |
| Defendants | ) |

I.      Recommendation

Defendants' motion for summary judgment (ECF No. 45) is before the undersigned for

Report and Recommendation pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and

Local Rules 72.1.3 and 72.1.4.  For the reasons discussed below, it is respectfully recommended

that the Defendants' motion be **GRANTED**.

II.      Factual and Procedural Posture

A.      Factual Background[1]

Plaintiff Joseph Shegog ("Shegog") is an inmate at the State Correctional Institution at

Albion ("SCI-Albion").  ECF No. 46, ¶ 1.  Since his incarceration, Shegog has worked multiple

---

[1] Unless otherwise noted, the following facts derive from the parties' respective concise statements of material fact
filed pursuant to LCvR 56.  *See* ECF No. 46 (Defendants' CSMF); ECF No. 60 (Plaintiff's CSMF).  Where a fact
stated in Defendants' concise statement is undisputed or supported by uncontroverted record evidence, citation will
be offered to their statement only.  Disputed facts will be noted.

jobs at the prison, including shower cleaner, cell cleaner, tutor, plumbing shop, the Correctional

Industries ("CI") shop, the kitchen, and the prison library. *Id.*, ¶ 9. In July of 2019, Shegog

began working as a stock clerk in the CI shop. *Id.*, ¶ 10. Every sixty days, he would receive a

progress report concerning his work performance. *Id.*, ¶ 11. On November 19, 2019, he

received such a report from his supervisor, Defendant Jennifer Mooney. *Id.* Although this report

gave Shegog "above average" or "average" ratings in all categories, Mooney did include the

following notation:

> Shegog has minimal errors on a scan station, however his overall
> orders per hour is low; averaging 25/26 per hour instead of the 35
> or more. At times, he has to work alone when his scan partner has
> is [sic] on the back dock. Shegog needs to show improvement on a
> scan station while maintain a low errors [sic].

*Id.*, ¶¶ 12-13; *see also* ECF No. 47-1, p. 5. Shegog admits that he did not meet the 35 or more

units per hour benchmark, but disputes the remainder of Mooney's notation. ECF No. 60, ¶ 13.

Regardless, it is not disputed that Shegog received a raise in pay after this performance report.

ECF No. 46, ¶ 14.

During his deposition, Shegog admitted that he disagreed with Mooney's criticism of his

work output and spoke to her to explain that he was working alone and that "two people are

supposed to produce 35 bags an hour." ECF No. 47-6, at p. 36. He spoke to others regarding his

disagreement with Mooney's review, including "other staff members directly involved with the

C.I. shop." ECF No. 46, ¶ 16; ECF No. 60, ¶ 16.

On January 28, 2020, during an in-person meeting, Shegog was given another

performance review from Mooney. *Id.*, ¶ 17. Prior to writing her report, Mooney consulted with

others in the CI shop, including clerks, and truck drivers. *Id.*, ¶ 18. Michael Johnson, a truck

driver, and Melissa Hilinski, a stock clerk, participated in the meeting.  *Id.*, ¶ 21.  In this report,

Mooney gave Shegog a "below average" rating for his performance in accepting "constructive

feedback" and for his "acceptance of responsibility.  *Id.*, ¶ 23.  Mooney noted that

> Since Shegog's last progress report, he has improved on doing
> more than the minimal amount of work by bringing up his overall
> orders per hour from 25/26 to 33/34 orders per hour.  However,
> Shegog needs to improve on accepting responsibility and
> constructive feedback."

ECF No. 47-1, p. 3.  Shegog disagreed with this assessment and refused to sign it.  He filed a

grievance after receiving this report in which he claimed that Mooney retaliated against him by

giving him low marks because he spoke to others in CI shop about his production benchmarks.

*Id.*, ¶¶ 26-27.

On March 23, 2020, Shegog and other CI shop workers were told that they would have to

start wearing masks. ECF No. 47-6, p. 19 (Shegog deposition).  Prior to this, masks had been

optional.  *Id.*  Shegog asked whether could decline to wear a mask and who gave the order to

start wearing them.  ECF No. 47-8, p. 2 (Grinell Statement).  Defendant Grinell responded,

telling Shegog to "stop arguing" and "just wear the f***ing thing."  *Id.* (modification added).

Shegog disputes that he was arguing and claims Grinell told him to "shut the f**k up."  ECF No.

60, ¶ 31 (modification added).  Grinell further asserts that when he told Shegog to stop arguing,

he responded, "or what?"  ECF No. 46, ¶ 31.  Shegog denies this.  ECF No. 60, ¶ 31.  Grinell

ordered Shegog back to his cell, but the reason for doing so is disputed.  Grinell claims he sent

Shegog to his cell because Shegog was "impeding work and being defiant."  ECF No. 46, ¶ 32.

Shegog says he was sent back to his cell in retaliation for filing a grievance against Mooney.

ECF No. 60, ¶ 32.  Shegog was not issued a misconduct regarding this incident.  ECF No. 46, ¶

35.  That same day, Shegog filed a grievance claiming Grinell sent him to his cell in retaliation

for his earlier grievance against Mooney. *Id.*, ¶ 36.  The next day, March 24, 2020, Shegog was

suspend from his job. *Id.* ¶ 37.

On April 29, 2023, an official "staffing meeting" was held and Shegog was removed

from his job in the CI shop. *Id.*, ¶ 38.  Defendants Giles, DePlatchett, Shrader, and Grinell

attended the meeting. *Id.*, ¶ 39.

B.      Procedural Posture

Shegog's pro se complaint was docketed on February 8, 2020.  ECF No. 8.  All

Defendants, Officer Grinell, Jennifer Mooney, Jennifer DePlatchett, Ms. Shrader, and Ms. Giles,

are employees of the DOC. *Id.*, ¶¶ 2-6.  After the close of discovery, Defendants filed a motion

for summary judgment (ECF No. 45), a concise statement of material fact (ECF No. 46), a brief

in support of their motion (ECF No. 48) and an appendix containing various exhibits (ECF No.

47).  Shegog has filed a brief in opposition (ECF No. 58), a responsive concise statement (ECF

No. 60), and a declaration appending numerous exhibits (ECF No. 61).  Thus, the motion has

been fully briefed and is ripe for disposition.

C.      Shegog's Retaliation Claims

Shegog's complaint brings claims pursuant to 42 U.S.C. § 1983 for alleged violations of

his rights under the First and Eighth Amendments[2].  ECF No. 8, p. 1.  He contends that the

Defendants dismissed him from his CI job in retaliation for his having filed grievances and

---

[2] To the extent Shegog is attempting to assert a claim under the Eighth Amendment (*see, e.g.*, ECF No. 8, p. 1), such a claim fails as a matter of law.  The loss of a prison job, regardless of the reasons, does not amount to cruel and unusual punishment under the Eighth Amendment. *See Rathy v. Wetzel*, 2014 WL 4104946, at *9 (W.D. Pa. Aug. 19, 2014) (citing *Clark v. Maryland Dep't of Pub. Safety and Corr. Serv.*, 316 Fed. Appx. 281 (4th Cir. 2009) ("[A]s prisoners do not have a constitutionally protected right to work while incarcerated, termination from a prison job does not constitute an Eighth Amendment violation.")).  Consequently, Defendants are entitled to judgment as a matter of law on Shegog's Eighth Amendment claim stemming from the loss of his job and associated wages.

raised other issues concerning the workplace. *See, e.g., id.* at ¶¶ 29-34.  Specifically, Shegog
asserts that Mooney gave him unsatisfactory grades on his January 2020 review because he
complained about Mooney's November, 2019 progress report. *Id.*, ¶¶ 28-29.  He alleges that
Grinnell suspended him from his CI job and sought his ultimate dismissal from that position in
retaliation for his having filed a grievance against Mooney. *Id.*, ¶ 30.  Similarly, Shegog
contends that Shrader, Giles, and DePlatchett voted to remove him from his CI job in retaliation
for his having filed grievances. *Id.*, ¶¶ 31-34.

III.    Legal Standards

    A.    Motions for Summary Judgment

    Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the
movant shows that there is no genuine dispute as to any material fact and the movant is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under this standard "the mere existence of
some alleged factual dispute between the parties will not defeat an otherwise properly supported
motion for summary judgment; the requirement is that there be no genuine issue of material fact."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A disputed fact is "material" if
proof of its existence or nonexistence would affect the outcome of the case under applicable
substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078
(3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury
could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514,
United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

    When determining whether a genuine issue of material fact remains for trial, the court
must view the record and all reasonable inferences to be drawn therefrom in favor of the
nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*,

963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

The summary judgment standard, as recounted above, "is somewhat relaxed with respect to pro se litigants. Where a party is representing himself pro se, the complaint is to be construed liberally. A pro se plaintiff may not however, rely solely on his complaint to defeat a summary judgment motion." *Simmons v. Gilmore*, 2021 WL 1215773, at *8 (W.D. Pa. Mar. 31, 2021) (citing *Miller v. McClure*, 2020 WL 1049750, *6 (W.D. Pa. Mar. 4, 2020) and *Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.")). *See also Bond v. State Farm Ins. Co.*, 2020 WL 4936967, at *3 (W.D. Pa. Aug. 24, 2020). Allegations made without

6

evidentiary support, however, may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir.

2000); *see also Schoch v. First Fid. Reincorporation*, 912 F.2d 654, 657 (3d Cir. 1990)

("[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment.").

     B.     Retaliation Claims

     Prisoners do not have a protected interest in prison employment. *See James v. Quinlan*,

866 F.2d 627, 629 (3d Cir.), *cert. denied*, 493 U.S. 870 (1989). *See also, Howard v. Coupe*,

2023 WL 2207592 (3d Cir. Feb. 24, 2023). Nonetheless, a prisoner cannot be fired from or

passed over for a job in retaliation for exercising a constitutional right. *See Mack v. Warden

Loretto FCI*, 839 F.3d 286, 300 n.76 (3d Cir. 2016). To support a retaliation claim, Shegog must

produce evidence demonstrating that (1) his conduct was constitutionally protected; (2) he

suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected

conduct was a substantial or motivating factor in the decision to take the adverse action. *Watson

v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d

Cir. 2001)). *See also Baez v. Mooney*, 2022 WL 1694108, at *4 (W.D. Pa. Mar. 17, 2022),

*report and recommendation adopted*, 2022 WL 1689506 (W.D. Pa. May 26, 2022); *Williams v.

Clark*, 2021 WL 6052121, at *9 (W.D. Pa. Dec. 20, 2021). "Because retaliation claims can be

easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism

to avoid becoming entangled in every disciplinary action taken against a prisoner." *Carter v.

Slater*, 2021 WL 5605289, at *8 (W.D. Pa. Nov. 30, 2021) (quoting *Miskovitch v. Hostoffer*, 721

F. Supp. 2d 389, 396 (W.D. Pa. 2010)). Thus, on summary judgment, Shegog must cite to

relevant portions of the summary judgment record to establish a genuine issue of material fact as

to each element of his claim. *See Angle v. Carter*, 2019 WL 981914, at *3 (W.D. Pa. Feb. 1,

2019); *Waskiewicz v. PPL Services, Inc.*, 2012 WL 170693 at *4 (E.D. Pa. Jan. 19, 2012). The

first element of the analysis requires a legal determination; the remaining steps present questions for the fact finder. *See Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (citations omitted).

Shegog's claim against each Defendant will be evaluated with these legal standards as guidance.

## IV.   Discussion and Analysis

### A.   Defendant Mooney

Shegog contends that Mooney gave him below average marks on his January, 2020, progress report in retaliation for his "speaking with her co-workers and voicing his displeasure with her last review." ECF No. 40 (pretrial statement); ECF No. 8, ¶ 28 (complaint). Mooney argues that Shegog's speaking to others concerning her performance evaluation is not a constitutionally protected activity. *See* ECF No. 48, pp. 7-8. She also contends that Shegog has failed to point to evidence establishing an adverse action. *Id.*, pp. 8-9. Finally, she contends that even if Shegog had met the first two requirements for a retaliation claim, his constitutionally protected conduct was not the motivation behind her report. *Id.*, pp. 9-10.

The Court will assume, without deciding, that Shegog's speaking with others about negative comments in Mooney's November, 2019 evaluation was protected speech under the First Amendment.[3] *See McClenton v. Ryan*, 2021 WL 103642, at *5 (M.D. Pa. Jan. 12, 2021)

---

[3] The Defendants argue that Shegog's conversations with other staff and inmates about Mooney's comments is not constitutionally protected activity. *See* ECF No. 48, p. 7. They contend that Shegog's actions amounted to nothing more than complaints to others about his dissatisfaction with Mooney's review. Thus, his comments amounted to nothing more than "purely private" concerns expressed in an employment context. *See* ECF No. 48, p. 8 (citing *Snyder v. Phelps*, 562 U.S. 443, 452 (2001)). But Courts have also concluded that workplace complaints by inmates can be protected activity under the First Amendment. *See, e.g., Ortiz v. Federal Bureau of Prisons*, 290 F. Supp.3d 96 (D. Mass. 2017). Here, however, the Court need not make a determination on this question because, even assuming Shegog's comments were protected speech, there was no adverse action imposed upon him.

(inmate's verbal complaints to other staff about employment supervisor were protected speech) (citing *Mack v. Warden Loretto FCI*, 839 F.3d 286, 297-99 (3d Cir. 2016); *Davila-Bajana v. Holohan*, 2007 WL 2811633, at *5 (W.D. Pa. Sept. 24, 2007) (assuming that an inmate-plaintiff's verbal complaints were constitutionally protected activity)).

Shegog's claim fails nevertheless because no evidence supports a finding that Shegog suffered an adverse action for engaging in that protected conduct. "In the context of a retaliation claim, adverse actions must be more than *de minimis*." *Buxton v. Wetzel*, 2022 WL 3357880, at *6 (W.D. Pa. Aug. 15, 2022). Two less than average work ratings out of seventeen total categories do not meet the threshold for an adverse action. *See James v. A.C. Moore Arts and Crafts, Inc.*, 2022 WL 327012, at *3 (3d Cir. Feb. 3, 2022) ("One negative evaluation, standing alone, is not enough to constitute an adverse action."). That is, Mooney's less than glowing assessment of Shegog's work in two categories with which Shegog disagreed was *de minimis*. *See Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 787 (3d Cir. 1998) ("minor or trivial actions that merely make an employee 'unhappy' are not sufficient to qualify as retaliation"). "[U]nfair reprimands and negative performance reviews generally are not materially adverse actions unless they are accompanied by 'tangible job consequences.'" *Heredia-Caines v. Lehigh Valley Hosp., Inc.*, 580 F. Supp. 3d 114, 130 (E.D. Pa. 2022) (citing *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 383 (7th Cir. 2020); *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008); *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001).

Shegog has not shown that he suffered any "tangible job consequences" as a result of Mooney not rating his work in two categories as high as he alleges he deserved. *Id.* Instead, the evidence demonstrates that Mooney's mixed review of Shegog's work performance in January, 2020 was criticism without consequence. *See, e.g., Weston v. Pennsylvania*, 251 F.3d 420, 431

(3d Cir. 2001) (defendant's conduct was not "adverse" because the plaintiff could not prove that written reprimands affected the terms and conditions of his employment, as the written reprimands did not result in a demotion, a change in work schedule, a reassignment, or a denial of pay raise), *abrogated in part on different grounds by Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53 (2006).  Indeed, Shegog admits that he received an "above average" overall rating on his January, 2020, evaluation and that he also received a pay raise.  ECF No. 60, ¶ 14; ECF No. 47-6, p. 38 (Shegog Deposition).  *See also* ECF No. 46, ¶ 25 ("Shegog did receive an 'above average' overall rating and a raise following his January 2020 report.").  Although the denial of a pay raise may be sufficient to deter a person of ordinary firmness from exercising his constitutional rights, *see, e.g., Williams v. Nyberg*, 2022 WL 557292, at *3 (W.D. Pa. Feb. 24, 2022), it cannot be said that the award of one would do the same.  *See Rodriguez v. Thomas*, 299 F. Supp. 3d 618, 641 (M.D. Pa. 2018) ("The proper focus is whether a person of 'ordinary firmness' would have been deterred.") ; *see also Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012).

Thus, because Shegog has failed to point to evidence that Mooney's January, 2020 performance evaluation was an adverse action, his retaliation claim against her must fail.

B.     Defendant Grinell

Shegog's retaliation claim against Grinell is based on an incident that took place on March 23, 2020.  On that day, Shegog was told by a supervisor ("Mr. Martin") that CI employees would need to wear masks on the shop floor and Shegog raised questions about that new directive and who ordered it.  *See* ECF No. 46, ¶¶ 29-30; ECF No. 60, ¶¶ 29-30.  Grinell told Shegog to either "shut the f**k up" or to "just wear the f**king thing."  ECF No. 47-8, p. 2 (Grinell statement); ECF No. 60, ¶ 31.  Grinell then ordered Shegog to return to his cell and stay

there.  ECF No. 60, ¶ 32.  Shegog then testified that he could "tell Grinell was upset about a

grievance I had filed[4] because he said he don't care if I write another grievance."  *Id.*, p. 21.

Shegog also stated that Grinell mentioned the grievance he wrote against "Jennifer."  *Id.*  Based

on this, Shegog claims Grinell fired him for filing a grievance against Mooney.

    In support of his position, Shegog submitted a declaration from another inmate, William

Brown.  *See* ECF No. 61-5.  Brown declares that he was in the CI shop on March 23, 2020,

"right next to Shegog," when Grinell "continued to confront Shegog something about writing

another grievance.  Shegog responded what does a grievance have to do with anything?  Grinell

said you filed that grievance, Grinell got upset and said get the f**k out.  Shegog never came

back to work after that."  ECF No. 61-5, p. 1.  Shegog contends that Grinell "fired" him from his

prison job on March 23, 2020 in retaliation for filing a grievance against Mooney in violation of

the First Amendment.  *Id.*, ¶¶ 18-19, 30 ("As previously stated, Plaintiff was fired, and

threatened[5] by defendant Grinell for filing an inmate grievance against defendant Mooney.").

Shegog also acknowledged in his deposition that his claim against Grinell was for filing a

grievance "against Ms. Mooney."  ECF No. 47-6, p. 30.

    Grinell disputes material aspects of Shegog's position.  In his sworn declaration, Grinell

states that he sent Shegog back to his cell because Shegog "became argumentative in front of 43

other inmates … and was disrespectful.  When I told him to stop arguing and wear his mask as a

Covid precaution, he retorted, 'or what?'"  ECF No. 47-11, ¶ 6.  Grinell admits that he requested

---

[4] This is Grievance No. 848548, dated January 31, 2020.  *See* ECF No. 61-4, p. 1.

[5] Any argument by Shegog that Grinell's unspecified threats amounted to retaliation under the First Amendment
fails as a matter of law.  *See, e.g., Washington v. Barnhart*, 2021 WL 2342924, at *17 n.33 (W.D. Pa. May 14, 2021)
(citation omitted) (retaliation claim based on unspecified threats did not rise to an "adverse action").

Shegog be removed from his CI job after this incident but contends that he did not know that Shegog had filed a grievance against Mooney. *Id.*, ¶¶ 8-9.

Initially, there is no dispute that Shegog's filing of a grievance against Mooney on January 31, 2020, was a protected action. *See Real v. Grenevich*, 2023 WL 33338, at *1 (3d Cir. Jan. 4, 2023) ( "Grievance-filing is constitutionally protected activity."); *see also* ECF No. 61-4 (grievance). Thus, he has established the first prong of a retaliation claim. As to the second prong, the record demonstrates that Shegog suffered an adverse action. Neither party disputes that when Shegog returned to work the next morning, he was suspended from his employment and sent back to his cell. *See* ECF No. 47-6, p. 22. Shegog testified at his deposition that upon his arrival, he heard Grinell tell Mr. Martin that "he wanted me f**king fired" and that Martin then told him to return to his unit pending a staffing meeting.[6] *Id.* Grinell acknowledges in his declaration that he "requested Shegog be removed from his C.I. Shop job after the incident on March 23, 2020." [7] Shegog lost his prison job about a month later. *See* ECF No. 47-2, p. 2. ECF No. 47-11. Because the loss of a prison job constitutes adverse action sufficient to deter the exercise of First Amendment rights, Shegog has satisfied the second prong of the retaliation analysis. *See, e.g., Baez v. Mooney*, 2022 WL 1694108, at *6 (W.D. Pa. Mar. 17, 2022)*; Pepe v.*

---

[6] This staffing meeting did not take place until April 29, 2020. *See* ECF No. 46, ¶ 38; ECF No. 47-6, p. 23 (Shegog deposition noting the meeting was held in "late April.").

[7] Grinell characterizes his action as "suspending Shegog from his job." *See* ECF No. 45, p. 2 (emphasis added). The Court of Appeals has held that a temporary suspension of prison employment is insufficient to meet the adverse action prong of a retaliation claim. *See Walker v. Mathis*, 665 Fed. Appx 140, 143 (3d Cir. 2016). But here, Shegog has presented evidence which suggests that he did not return to his job for over a month and was ultimately removed from his position. Thus, his suspension was not a "temporary inconvenience" of a few days, but rather amounted to an eventual termination. *See Walker*, 665 Fed. Appx at 143. And an inmate's termination from prison employment has consistently been found to be an adverse action sufficient to deter a person of ordinary firmness from exercising their constitutional rights. *See, e.g., Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (termination of prison employment constitutes adverse action).

*Lamas*, 2022 WL 356 WL 3563487, at *6 (E.D. Pa. Aug. 18, 2022); *Buxton v. Wetzel*, 2022 WL 3357880, at *6 (W.D. Pa. Aug. 15, 2022).

But the Court must yet determine whether there is evidence from which a jury could conclude that Grinell's adverse action was plausibly motivated by the filing of a grievance against Mooney. *See Mack v. Yost*, 968 F.3d 311, 323 (3d Cir 2020); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d. Cir. 2003)). "To establish the requisite causal connection a plaintiff must usually show either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establishing a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

At the outset, the record includes a memorandum from Mooney dated March 24, 2020, in which she—not Grinell—suspends Shegog from his job without pay and asks that a "unit management staffing" meeting be scheduled. *See* ECF No. 47-7, p. 2. Shegog does not present any evidence to challenge this document or to support the contention that Grinell had the authority to suspend and/or fire Shegog. Therefore, the record appears to be insufficient to support requisite causal connection such that summary judgment could be granted to Grinell on this basis alone.

But even when assuming Grinell has such authority, neither the chronology nor the comments attributed to Grinell is adequately suggestive of retaliatory motive to sustain the causation element of Shegog's claim . Regarding the timing of Shegog's suspension from employment, the Court of Appeals has not specified a threshold number of days to show an unusually suggestive temporal proximity between the protected activity and the retaliatory action. On one end of the spectrum, the Court of Appeals held an inmate's lawsuit filed in 2009 was "just too remote to suggest a retaliatory motive" for conduct occurring in 2011. *Watson v.*

*Rozum*, 834 F.3d 417, 423 (3d Cir. 2016).  At the other end of the spectrum, the Court has found

that an adverse action occurring within hours or days of the protected activity may demonstrate

causation on its own.  *See, e.g., Hill v. Barnacle*, 655 Fed. Appx 142, 146 (3d Cir. 2016).  The

timing of protected conduct and adverse action here falls between these examples but, ultimately,

beyond the proximity necessary to support an inference of retaliatory motive.  Shegog filed his

grievance against Mooney on January 31, 2020.  *See* ECF No. 61-4, p. 1.  Shegog's exchange

with Grinell did not occur until March 23, 2020.  Thus, fifty-two days (that is, one month and

twenty-two days) elapsed between the two.   Courts have concluded that similar passages of time

were not unusually suggestive.  *See, e.g., Carroll v. Clifford Township*, 625 Fed. Appx 43, 49 (3d

Cir. 2015) ("little more than a month" between protected activity and adverse action, without

more, was not unusually suggestive); *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d

Cir. 2003) (period of three weeks between protected activity and employment termination did not

constitute "unusually suggestive temporal proximity"); *Kelly v. Phila. Housing Development

Corp.*, 2022 WL 3280108 at *8 (E.D. Pa. Aug. 11, 2022) (passage of "more than a month"

between protected activity and adverse action was not unusually suggestive).  This Court should

conclude the same: the passage of time identified in this record does is not suggest an unusual

temporal proximity between Shegog's protected conduct and Grinell's adverse action.  *See, e.g.,

Williams v. Phila. Housing Authority Police Dept.*, 380 F.3d 751, 760 (3d Cir. 2004).

Nor has Shegog provided evidence of a history of antagonism between himself and

Grinell that could be coupled with the timing to create a causal link.  Shegog's deposition fails to

mention a history of antagonistic interactions with Grinell.  And, in answer to an interrogatory

posed by Shegog, Grinell stated that he did not ever recall filing an "incident or misconduct

report" against Shegog, with the exception of the one he filed after Shegog was removed from his job. *See* ECF No. 61-6, ¶ 1.

Moreover, the protected activity on which Shegog bases his retaliation claim was the filing of a grievance against Mooney, not Grinell. *See* ECF No. 61-4, p. 1. In the retaliation context, courts have explained that no causal link typically exists where the alleged perpetrator of the retaliatory activity was not the subject of the constitutionally protected activity. *See, e.g., Nunez v. Wetzel*, 2023 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (citations omitted); *Ray v. Rogers*, 2014 WL 1235905, at *7 (W.D. Pa. Mar. 25, 2014) (where none of the grievances filed by plaintiff were against alleged retaliators, any connection between the two was "attenuated at best."). And courts have consistently rejected retaliation claims "against one defendant based on [protected activity] against another [individual]" for lack of retaliatory motive. *Murray v. McCoy*, 2023 WL 2285877, at *8 (M.D. Pa. Feb. 28, 2023); *Victor v. Lawler,* 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 Fed. Appx 126 (3d Cir. 2014); *Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("There is no apparent reason why [the moving defendants] would want to retaliate against plaintiff for filing a lawsuit against others."); *see also Royster v. Beard*, 308 Fed. Appx 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity). Shegog's grievance against Mooney does not name Grinell, nor did Shegog ever file a grievance against Grinell in January of 2020. *See* ECF No. 47-3, p. 3. Thus, there is no causal connection on this record.

Shegog contends that Grinell's own words on March 23, 2020, connect his adverse actions to the filing of a grievance against Mooney in January of 2020. Shegog claims that Grinell said that he "don't care if I write another grievance," and that Grinell mentioned he

"wrote a grievance against Jennifer." ECF No. 47-6, p. 21. But even when drawing all reasonable inference in the light most favorable to Shegog, this statement is not evidence of any causal connection between Shegog's past grievance against Mooney in January and Grinell's suspension/termination of Shegog's job in March. Grinell simply stated that he does not care whether Shegog opted to file a grievance against him, like he did against Mooney, for suspending him from his job for insubordination. Put another way, Grinell simply express his lack of concern that Shegog might file a grievance against him challenging his suspension based on his past filing of a grievance against Mooney. Grinell's statement cannot be read as a response to Shegog's grievance against Mooney or as an attempt to dissuade him from filing a grievance him based on his job suspension—and indeed Shegog proceeded to do so that same day. *See* ECF No. 47-4, p. 6.

Brown's declaration similarly does not help Shegog. Although Brown is unequivocal when he states that he was in the shop on March 23, 2020, and standing next to Shegog, he is less so when it comes to what Grinell may have said. Brown only states that Grinell mentioned "something about writing another grievance" and that he told Shegog, "you filed that grievance." ECF No. 61-5, p. 1. Neither statement identifies a particular grievance or conveys information to support an inference that Grinell's actions were in response to or prompted by Shegog's having filed a grievance against Mooney. *Id.* Thus, like the statements Shegog attributes to Grinell, Brown's affidavit does not support that Grinell took any adverse employment action against Shegog because of his filing of the grievance against Mooney.

Because the record includes insufficient evidence upon which a jury could reasonably find that Grinell took an adverse action against Shegog because Shegog filed a grievance against Mooney or any other protected conduct, Grinell is entitled to judgment as a matter of law.

C.      Defendants DePlachett, Shrader, and Giles

Shegog's retaliation claim against Defendants DePlachett, Shrader, and Giles appears also to be premised upon his filing of a grievance against Mooney.[8]  *See* ECF No. 47-6, p. 26 (Shegog Deposition).  It is undisputed that a staffing meeting took place on April 29, 2020, and that Shegog's position with CI was terminated at or immediately following that meeting.  ECF No. 46, ¶ 38; ECF No. 47-6, pp. 23-24.  Giles, DePlatchett and Shrader attended the meeting along with Grinell and Sgt. Cage, a non-party to this action.  *Id.*, ¶ 39.  When Shegog was asked at his deposition what the participants said during the meeting, he testified that Giles told him he had "too many staffings;" DePlatchett stated that he "had received a misconduct in the CI shop;" and that Shrader referenced his "behavior on the unit."  ECF No. 47-6, p. 24.

The Defendants concede that Shegog can show that he engaged in protected activity (the filing of grievances) and that he suffered an adverse action (removal from his prison job).  ECF No. 48, p. 10.  But, they contend that the record supports that Giles, DePlatchett, and Shrader, removed Shegog from his job because of his poor work performance and disruptiveness and that the evidence does not support a finding that they took this action because he filed a grievance against Mooney or any other person.  Thus, they again contend, the requisite causation is lacking.  *See* ECF No. 48, p. 10.

And here again, Shegog has failed to produce evidence sufficient to demonstrate a causal link between the loss of his job and the filing of any grievance.  First, the chronology is not unusually suggestive of retaliatory motive.  Shegog filed his grievance against Mooney in

---

[8] Shegog's Complaint does not specifically plead that these three Defendants fired him because he filed grievances and in his memorandum in opposition to the motion to dismiss, Shegog merely argues that he lost his job because he filed "grievances."  See ECF No. 59, p. 2.  However, in his deposition, Shegog clarified the reasons for his retaliation claim: "A:  I believe I was removed from my job because I wrote a grievance against Ms. Mooney.  Q: Okay.  Do you believe you were removed from your job for any other reasons?  A: No."  ECF No. 47-6, p. 26.

January, of 2020, and Shrader, DePlatchett, and Giles did not vote to remove him from his prison employment until April, three months later. This is not "unusually suggestive" timing. *See, e.g., Boon v. Lancaster J.C.C. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action … cannot create an inference of causation and defeat summary judgment."). Without more, the chronology of events in this case cannot create an inference of causation and defeat summary judgment. *See Blakney v. City of Phila.*, 559 Fed. Appx 183, 186 (3d Cir. 2014) (citations omitted) (holding that "that a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive."); *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007).

Nor has Shegog demonstrated a history of antagonism between himself and Shrader, DePlatchett, or Giles such that, when coupled with the timing, establishes a causal link. *DeFlaminis*, 480 F.3d at 267. As noted above, Shegog's grievance was against Mooney—not any of these defendants. Indeed, Shegog never filed a grievance against any of these Defendants. And as explained above, causation is typically belied when "the alleged perpetrator of the retaliatory activity was not the subject of the constitutionally protected activity." *Nunez*, 2023 WL 2385931, at *5 (citing *Calloway*, 2022 WL 4357468, at *9)).

Finally, even assuming a causal connection between Shegog's protected activity and the adverse action, the Defendants may still defeat his claim by showing that they "would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Watson*, 834 F.3d at 422. The record reflects that these Defendants voted to remove Shegog from his employment with CI because he had been argumentative with Grinell in front of more than forty other inmates on March 23, 2020, concerning the wearing of masks in

the workplace at the outset of the COVID-19 pandemic.[9]  *See* ECF No. 47-2.  Maintaining an

orderly and safe workplace, as well as keeping inmates safe and healthy during the COVID-19

pandemic are legitimate penological interests.  Thus, these Defendants have satisfied their

burden in that they have come forward with a sufficient quantum of evidence to demonstrate that

the termination of Shegog's employment was reasonably related to a legitimate penological

interest and that he would have lost his prison employment regardless of the filing of any

grievance against Mooney.  *See e.g., Drumgo v. Reese*, 2022 WL 429 5442, at \*15 (M.D. Pa.

May 20, 2022); *see also Cousins v. Dutton-McCormick*, 2022 WL 673330 , at \*2 (3d Cir. Jan 6,

2022 (holding safety, security, order, and discipline to be legitimate penological interests).

    Shegog contends these Defendants' reasons for removing him from his job were

fabrications used to disguise their real reasons for terminating his employment: the filing of

grievances against Mooney.  *See* ECF No. 8, ¶¶ 31-34; ECF No. 59, p. 2.  In support of this

contention, Shegog argues that Shrader and DePlatchett were aware that he had filed grievances

against Mooney.  However, no evidence in the record supports this contention.[10]  And, even if

true, nothing in the record supports an inference that their knowledge of the grievance against

Mooney motivated or prompted their vote in favor of terminating Shegog's employment.

---

[9] The Court takes judicial notice that during 2020, many prisons in this judicial district and others had to impose various restrictions due to the exigencies presented by the Covid-19 pandemic.  *See, e.g., Collins v. Clark*, 2023 WL 349509, at \*2 (W.D. Pa. Jan. 20, 2023) (restrictions on law library access); *McCullough v. Ransom*, 2022 WL 821427, at \*1 (M.D. Pa. March 17, 2022).

[10] The closest Shegog comes to support this allegation is that DePlatchett sent an email on June 29, 2020, in which she told another individual who was requesting information about an unidentified grievance that Shegog "was a jerk to Jen Mooney." *See* ECF No. 61-11, p. 1.  Not only is the date of this evidence well past the date of his employment termination, it does not specifically reference Shegog's grievance against Mooney.  Thus, this email is nonspecific and cannot be considered evidence DePlatchett knew Shegog had filed a grievance against Mooney at the time of the staffing meeting.  And, while evidence from the grievance record establishes that Giles responded to Shegog's January, 2020, grievance against Mooney (*see* ECF No. 61-4, pp. 3-4), Shegog points to no evidence to contradict her declaration that she did not remember that he had previously filed a grievance against Mooney or any other DOC staff. *See* ECF No. 47-12, ¶¶ 7-8.

Furthermore, "while pretext is an available avenue to rebut a legitimate nondiscriminatory reason put forward by an employer-defendant defending against a retaliation claim in an employment setting, the Third Circuit has not recognized pretext in retaliation claims arising in a prison setting." *Holbrook v. Kingston*, 2013 WL 504816, at \*2 (W.D. Pa. Feb. 12, 2013), *aff'd*, 552 Fed. Appx 125 (3d Cir. 2014) (citing *Carter v. McGrady*, 292 F.3d 152 (3d Cir. 2002) (noting that even if prison officials were motivated by retaliatory animus toward jailhouse lawyers, there was sufficient evidence of plaintiff's misconduct offenses to conclude that this misconducts (*sic*) would have issued notwithstanding his jailhouse lawyering)). Thus, Shegog has failed to support a plausible finding of causation or a factually or legally viable argument based on pretext.

Because the record is insufficient to support the causation element of Shegog's retaliation claim against DePlachett, Shrader, and Giles and, alternatively, because these Defendants have demonstrated that Shegog's termination from his prison employment was "reasonably related to a legitimate penological interest," *see, e.g., Green v. Burkhart*, 2016 WL 11478176, at \*5 (W.D. Pa. Aug. 11, 2016), *report and recommendation adopted*, 2016 WL 5387653 (W.D. Pa. Sept. 27, 2016); *Rauser*, 241 F.3d at 334, summary judgment should be entered in favor of Shrader, DePlatchett, and Giles.

V.      Notice Concerning Objections

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72((b)(2), and Local Rule 72(D)(2), the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their

response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72(D)(2).

      DATED this 24th day of March, 2023.

                          BY THE COURT:

                          RICHARD A. LANZILLO
                          CHIEF UNITED STATES MAGISTRATE JUDGE